# In the United States Court of Federal Claims

No. 10-154C
Filed: December 16, 2010
**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| YRC, INC., successor-in-interest to YELLOW TRANSPORTATION, INC., | \* \* \* | Authority to Contract; Breach of Express or Implied-In-Fact Contract; |
| Plaintiff, | \* \* | Contract Disputes Act, 41 U.S.C. §§ 601-613; Marine Corps Order P7010.20 ¶ 1004-1; |
| v. | \* \* | Motion For Summary Judgment, RCFC 56(c); |
| THE UNITED STATES, | \* \* | Privity of Contract; Standing. |
| Defendant. | \* \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Tony Shapiro**, Shapiro and McMullen, Leawood, Kansas, Counsel for Plaintiff.

**James Robert Sweet**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

### MEMORANDUM OPINION AND FINAL ORDER

**Braden**, *Judge*.

## I.   RELEVANT FACTS.[1]

The Marine Corps Exchange ("MCX") is a division of the United States Marine Corps Community Services ("MCCS"). 5/21/10 Ide Dec. ¶ 1. MCX sells "discounted merchandise to military personnel and their family members, retirees, and other authorized patrons" in retail stores and over the internet. Compl. ¶ 2.

In 2004, the MCCS decided to centralize and coordinate MCX freight management by issuing a Request For Proposal ("RFP") for third party logistics ("3PL") management services. 5/21/10 Ide Dec. ¶ 6. Pursuant to the RFP, the 3PL provider was responsible for "among other things, arranging for pick-up, transport and delivery of vendor products to designated MCX

---

[1] The relevant facts were derived from: the March 10, 2010 Complaint ("Compl.") and attached Exhibits ("Pl. Ex. A-I"); Plaintiff's March 10, 2010 Request For Admissions ("Pl. RFA"); the May 21, 2010 Declaration of Jennifer Ide ("5/21/10 Ide Dec.") and attached Exhibits ("5/21/10 Ide Dec. Ex. 1-2"); and the August 6, 2010 Affidavit of Dawn Hawkins ("8/6/10 Hawkins Aff.").

locations using the most economical shipping method available that meets the assigned delivery date." *Id*. ¶ 4.

On July 22, 2004, Salem Logistics, Inc. ("Salem") was selected and awarded Contract No. H0104-C-0008.  5/21/10 Ide Dec. Ex. 1 at 1.  Contract No. H0104-C-0008 had an initial one-year term that was amended and modified several times into mid-2007.  5/21/10 Ide Dec. ¶ 7.

On October 31, 2007, the MCCS and Salem entered into a single source justification contract, No. H0107-D-0005 ("the 3PL Contract"), that had a one-year term and four subsequent option years.  *Id*. ¶ 8.  In March 2008, Salem contracted with Yellow Transportation, Inc.[2] to provide freight hauling services for MCX merchandise.  Pl. RFA at 8.

When MCX made a purchase, the retailer contacted YRC to make shipping arrangements and issued a straight bill of lading ("SBL").  Pl. RFA at 9.  The SBL showed "the merchandise being shipped, the pick-up point and the destination of the goods, and the tariff charged for transportation."  *Id.*  A MCX location was listed as the destination.  *Id.*  Most of the SBLs and the corresponding billing invoices at issue in this case list either "Marine Corps Exchange c/o Salem Logistics, Inc." or "MCX c/o Salem Logistics, Inc." as the party to be billed.  Pl. Ex. A, B.

In late 2008 and early 2009, Salem repeatedly failed to pay YRC and other freight carriers, although Salem received payment from the MCCS.  Pl. Ex. D; *see also* 5/21/10 Ide Dec. Ex. 1 at 43.  On February 27, 2009, the MCCS terminated the 3PL Contract with Salem for default.  5/21/10 Ide Dec. Ex. 1 at 43.  At that time, YRC was owed over $750,000.  8/6/10 Hawkins Aff. ¶¶ 14-15.  On that same date, Landair Transport, Inc. ("Landair") was designated as the interim contractor.  5/21/10 Ide Dec. Ex. 1 at 43; *see also* Pl. Ex. E.

On March 6, 2009, a MCX Retail Operations Program Assistant sent an e-mail to YRC to explain how YRC's outstanding freight bills would be handled.  Pl. Ex. E; *see also* 8/6/10 Hawkins Aff. ¶ 10.  YRC's outstanding bills were placed in three categories: shipments billed to Salem on or after January 26, 2009 should be re-billed to Landair for payment ("Category 1 Shipments"); for shipments billed prior to January 26, 2009 for which Salem had not been paid, MCX would pay to YRC directly ("Category 2 Shipments"); and for shipments for which MCX paid Salem, YRC would have to seek payment from Salem ("Category 3 Shipments").  Pl. Ex. E.

In April 2009, MCX paid YRC approximately $117,120 for all Category 2 Shipments.  8/6/10 Hawkins Aff. ¶ 14.

On March 23 and June 11, 2009, counsel for YRC sent letters to the MCCS seeking payment for the Category 3 Shipments.  Pl. Ex. D.  On July 6, 2009, the MCCS denied YRC's claim and advised YRC that: "Salem Logistics is the responsible party from whom you should seek payment."  *Id.*

---

[2] YRC Inc. is the successor-in-interest to Yellow Transportation, Inc.  Compl. ¶ 1.  Collectively, YRC Inc. and Yellow Transportation, Inc. are hereinafter referred to as "YRC" or "Plaintiff."

## II.     PROCEDURAL HISTORY.

On March 10, 2010, Plaintiff filed a Complaint in the United States Court of Federal Claims, together with attached exhibits, alleging a claim for breach of express and/or implied-in-fact contract for MCX's failure to pay Plaintiff $644,380.48 for freight hauling services and $225,533.17 for tariff charges.  Compl. ¶¶ 4-17.

On April 1, 2010, the Government filed a Consent Motion For An Enlargement Of Time, requesting until May 31, 2010 to respond to Plaintiff's March 10, 2010 Request for Admissions. On April 6, 2010, the court issued an Order granting the Government's request.  On May 3, 2010, the Government filed another Consent Motion For An Enlargement Of Time, this time seeking an additional 30 days to file a response to the March 10, 2010 Complaint.  On May 4, 2010, the court issued an Order giving the Government until June 9, 2010 to file an Answer to the March 10, 2010 Complaint.

On May 21, 2010, the Government submitted a Motion To Dismiss, pursuant to RCFC 12(b)(1) ("Gov't Mot."), together with the Declaration of Jennifer Ide ("5/21/10 Ide Dec.").[3] On the same date, the Government also submitted a Motion To Suspend pending resolution of the Government's May 21, 2010 Motion To Dismiss.  On May 28, 2010, Plaintiff submitted a Response to the Government's Motion to Suspend.  On June 2, 2010, the Government filed a Reply.

Following a June 4, 2010 telephone conference with the parties regarding the Government's May 21, 2010 Motions, on June 7, 2010, the court issued an Order converting the Government's May 21, 2010 Motion To Dismiss to a Motion For Summary Judgment, pursuant to RCFC 56, and setting a briefing schedule.  On August 6, 2010, Plaintiff filed a Memorandum In Opposition ("Pl. Opp."), together with the Affidavit of Dawn Hawkins ("8/6/10 Hawkins Aff.").[4]  On September 8, 2010 the Government filed a Reply ("Gov't Reply"), together with the Declaration of Leah Woodley ("9/8/10 Woodley Dec.").[5]

## III.    JURISDICTION.

### A.     Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act.  *See* 28 U.S.C. § 1491.  The Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any

---

[3] Ms. Ide was a Retail Operations Program Analyst (NF-04) with the MCCS.  5/21/10 Ide Dec. ¶ 1.

[4] Ms. Hawkins was a Manager-Revenue Management with YRC.  8/6/10 Hawkins Aff. ¶ 2.

[5] Ms. Woodley was a Supervisory Contract Specialist and Contracting Officer with the MCCS.  8/31/10 Woodley Aff. ¶ 1.

regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon it whenever the substantive right exists." *United States* v. *Testan*, 424 U.S. 392, 398 (1976). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls upon the plaintiff. *See FW/PBS, Inc*. v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

The Contract Disputes Act of 1978 ("CDA") authorizes the United States Court of Federal Claims to adjudicate claims for monetary damages arising from "any express or implied contract . . . entered into by an executive agency for . . . the procurement of services." 41 U.S.C. § 602(a)(2). The March 10, 2010 Complaint alleges a claim under the CDA for breach of an express and/or implied-in-fact contract. Compl. ¶¶ 4-17. Therefore, the court has subject matter jurisdiction to adjudicate the claims alleged in the March 10, 2010 Complaint. *See* 41 U.S.C. § 609(a)(1) ("[A] contractor may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary.").

A claim brought under the CDA, however, also must satisfy certain mandatory requirements before the United States Court of Federal Claims can exercise subject matter jurisdiction. *See* 41 U.S.C. § 605(a).[6] On March 23 and June 11, 2009, counsel for YRC sent letters to the MCCS asserting a "claim for payments for certain freight deliveries arranged by Salem Logistics, Inc." Pl. Ex. D. By a July 6, 2009 letter, the MCCS denied YRC's claim. *Id.* Because YRC filed a Complaint in this court within 12 months of the MCCS's denial, YRC has

---

[6] 41 U.S.C. § 605(a) provides in relevant part:

> All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. . . . Each claim by a contractor against the government relating to a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim.

41 U.S.C. § 605(a).

met the jurisdictional prerequisites to seek adjudication of a CDA claim in this court. *See* 41 U.S.C. § 609(a)(3).[7]

### B. Standing.

The United States Supreme Court has stated that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975). Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp.* v. *Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005) (quotation omitted). The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Specifically, to establish standing, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.* v. *Laidlaw Envtl., Serv., Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61). The United States Court of Appeals for the Federal Circuit also has held that "privity of contract . . . [is] an undisputed prerequisite for standing to sue in the [United States] Court of Federal Claims under the Tucker Act." *National Leased Housing Ass'n* v. *United States*, 105 F.3d 1423, 1435 (Fed. Cir. 1997).

The March 10, 2010 Complaint alleges that YRC has suffered an injury in fact that is traceable to the Government's alleged breach of contract, and has caused Plaintiff economic injury that can be determined in a specific amount. Compl. ¶¶ 4-17. The March 10, 2010 Complaint also alleges that privity of contract exists between Plaintiff and the Government. Compl. ¶¶ 5, 8. Therefore, YRC has established standing "as of the commencement of suit." *Rothe Dev. Corp.*, 413 F.3d at 1334 (quotation omitted).

## IV. APPLICABLE STANDARDS OF REVIEW.

### A. Standard For Decision On A Motion For Summary Judgment, Pursuant to RCFC 56.

On a motion for summary judgment, the moving party must show that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *See Moden* v. *United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005) ("Summary judgment is only appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."); *see also* RCFC 56(c). Only genuine

---

[7] 41 U.S.C. § 609(a)(3) provides:

> Any action [filed in the United States Court of Federal Claims under the CDA] shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim, and shall proceed de novo in accordance with the rules of the appropriate court.

41 U.S.C. § 609(a)(3).

disputes of material facts that might affect the outcome of the suit will preclude entry of summary judgment. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). The "existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Id*. at 247-48. To avoid summary judgment, the nonmoving party must put forth evidence sufficient for a reasonable finder of fact to return a verdict for that party. *Id*. at 248-50.

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 325 (1986) (holding the moving party must meet its burden "by 'showing' – that is pointing out to the [trial court] that there is an absence of evidence to support the nonmoving party's case."); *see also Riley & Ephriam Constr. Co., Inc.* v. *United States*, 408 F.3d 1369, 1371 (Fed. Cir. 2005) ("The moving party bears the burden of demonstrating the absence of a genuine issue of material fact."). Once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to show the existence of a genuine issue for trial. *See Novartis Corp.* v. *Ben Venue Labs.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (explaining that, once a movant demonstrates the absence of a genuine issue of material fact, "the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial.").

A trial court must resolve any doubt over factual issues in favor of the nonmoving party. *See Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587 (1987) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotations and citation omitted). Further, all reasonable inferences and presumptions must be resolved in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255; *see also Casitas Mun. Water Dist.* v. *United States*, 543 F.3d 1276, 1283 (Fed. Cir. 2008) ("[A]ll justifiable inferences [are drawn] in favor of the party opposing summary judgment.").

**V.    THE GOVERNMENT'S MAY 21, 2010 MOTION FOR SUMMARY JUDGMENT.**

**A.    There Was No Express Or Implied-In-Fact Contract Between Plaintiff And The Government.**

The March 10, 2010 Complaint alleges a claim for breach of "express and/or implied-in-fact contracts" based on MCX's failure to pay Plaintiff for certain freight hauling services. Compl. ¶ 5. The Government's May 21, 2010 Motion for Summary Judgment argues that there was neither an express nor implied-in-fact contract between MCX and YRC, because there was no mutuality of intent.

The precedent governing mutuality of intent to contract is well established. In *Suess* v. *United States*, 535 F.3d 1348 (Fed. Cir. 2008), the United States Court of Appeals for the Federal Circuit held:

> A contract need not be memorialized in a single document; rather, a contract may arise as a result of the confluence of multiple documents so long as there is a clear indication of intent to contract, and the other requirements for concluding that a contract was formed are met.

*Id.* at 1359 (internal quotations and citations omitted); *see also Trauma Service Group* v. *United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) ("The general requirements for a binding contract with the United States are identical for both express and implied contracts. The party alleging a contract must show a mutual intent to contract including an offer, an acceptance, and consideration.") (internal citations omitted).

In this case, YRC attempts to establish mutuality of intent based on: communications between YRC's employees and MCX employees; the designation of "Marine Corps Exchange c/o Salem Logistics, Inc." or "MCX c/o Salem Logistics, Inc." as the party to be billed on the SBLs; and the MCX's decision to pay YRC for Category 2 Shipments. Pl. Opp. at 9-11; Pl. RFA at 13-15.

The communications at issue (Pl. Ex. G, H), show only that MCX employees were aware that YRC was providing services to MCX, but knowledge alone is not sufficient to establish a mutual intent to contract. *See Heydt* v. *United States*, 38 Fed. Cl. 286, 302 (1997) ("[T]he mere conferring of a benefit on the government does not create an implied-in-fact contractual relationship. Implied-in-fact contracts require conduct of the parties manifesting assent.") (internal quotations and citations omitted); *see also id.* at 302-03 ("Mere knowledge by the Government's agents that the Government's property was present at [plaintiff's] facilities and that the Government had received demands for payment . . . from [plaintiff] do not show a mutual intent to enter into a contract[.]").

Moreover, some of the communications admit that YRC contracted with Salem, not with MCX, to haul MCX freight. Pl. Ex. C. In fact, YRC repeatedly acknowledges that Salem was the party responsible for coordinating the shipment of MCX merchandise. Pl. RFA at 13 ("This offer originated from MCX and was communicated to YRC through Salem, who arranged for the transportation of MCX's merchandise. . . ."); *see also* 8/6/10 Hawkins Aff. ¶ 14 ("This amount was for services YRC had performed while Salem was still arranging for the transportation of MCX's merchandise, but which MCX had not provided to Salem to pass on to YRC."). None of this evidence shows "a clear indication of intent to contract." *Suess*, 535 F.3d at 1359.

The SBLs and billing invoices reference "Marine Corps Exchange c/o Salem Logistics, Inc." or "MCX c/o Salem Logistics, Inc." as the party to be billed, but do not establish an intent to contract. The SBLs were generated by vendors selling merchandise to MCX, not by MCX or the MCCS. 8/6/10 Hawkins Aff. ¶ 7. In fact, the billing address on the SBLs is that of Salem, not MCX nor the MCCS. 5/21/10 Ide Dec. ¶ 14. Likewise, the billing invoices generated by YRC were addressed either to Salem or Salem's successor Landair. Pl. Ex. B.

7

The direct payment made by MCX to YRC is also not evidence of intent to contract. The only shipments that MCX paid YRC for directly were the Category 2 Shipments -- shipments billed to Salem prior to January 26, 2009, but not yet paid by MCX. Pl. Ex. E. Significantly, the direct payment also came with a disclaimer that "if Salem were to pay [YRC for these shipments] then [YRC] would be responsible for reimbursing MCX." *Id.* MCX also informed YRC that, with respect to any shipments previously billed to Salem for which MCX previously paid Salem, YRC would have to seek payment from Salem. *Id.* These limitations and disclaimers do not evidence mutual intent to contract.

For these reasons, the court has determined that no mutual intent to contract existed between YRC and MCX and, therefore, as a matter of law, no express or implied-in-fact contract existed.

Assuming *arguendo* that there was a mutual intent to contract, YRC also has failed to establish that the MCX employees who dealt with YRC had actual authority to contract on behalf of their agency.

In *City of El Centro* v. *United States*, 922 F.2d 816 (Fed. Cir. 1990), the United States Court of Appeals for the Federal Circuit held:

> An implied-in-fact contract requires findings of: 1) mutuality of intent to contract; 2) consideration; and, 3) lack of ambiguity in offer and acceptance. When the United States is a party, a fourth requirement is added: the Government representative whose conduct is relied upon must have actual authority to bind the government in contract.

*Id.* at 820; *see also Trauma Service Group*, 104 F.3d at 1325 ("A contract with the United States also requires that the Government representative who entered or ratified the agreement had actual authority to bind the United States.").

YRC argues that "MCX purchasing agents" were authorized to enter into contracts by Marine Corps Order P7010.20 ¶ 1004-1. Pl. Opp. at 12-13. Therefore, because MCX purchasing agents arranged for the transportation of MCX merchandise by YRC, the MCX purchasing agents were acting pursuant to their authority to contract. *Id.* at 12. This logic ignores the fact that the shipping information listed on the SBLs was generated by the vendors of the merchandise, not by "MCX purchasing agents." 8/6/10 Hawkins Aff. ¶ 7. YRC proffered no other evidence that any of the MCX employees it dealt with had the authority to contract for the Government. *See* 9/8/10 Woodley Dec. ¶¶ 4-7 (stating that none of the MCX employees in the communications proffered by Plaintiff are authorized to enter into MCCS contracts).

For these reasons, the court further has determined that none of the MCX employees who dealt with YRC had actual authority to contract for the Government.

### B. There Was No Privity Of Contract Between Plaintiff And The Government.

It is also a "well-entrenched rule that a subcontractor cannot bring a direct appeal against the [G]overnment." *United States* v. *Johnson Controls, Inc.*, 713 F.2d 1541, 1550 (Fed. Cir. 1983). There is, however, an exception to this rule where:

> the prime contractor was (1) acting as a purchasing agent for the government, (2) the agency relationship between the government and the prime contractor was established by clear contractual consent, *and* (3) the contract stated that the government would be directly liable to the vendors for the purchase price.

*Id.* at 1551 (emphasis added); *see also Globex Corp.* v. *United States*, 54 Fed. Cl. 343, 347 (2002) ("Because subcontractors typically are not in privity of contract with the Government, the well-entrenched general rule is that subcontractors cannot directly sue the Government.") (citation omitted).

The 3PL Contract states that "[Salem] shall not represent itself to be an agent or representative of MCCS or any other agency or instrumentality of the United States." 5/21/10 Ide Dec. Ex. 1 at 19. The 3PL Contract further provides that "[a]ny subcontractor used in connection with this contract is the agent of the [Salem] and not the agent of MCCS." *Id*. YRC was a subcontractor of Salem. Therefore, as a matter of law, YRC cannot establish privity of contract in this case.

### VI. CONCLUSION.

For the above reasons, the Government's May 21, 2010 Motion For Summary Judgment is granted. The Clerk of the United States Court of Federal Claims is directed to enter judgment in favor of the Government.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**